[Cite as *Petranek v. Salay*, 2024-Ohio-4745.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STEVE C. PETRANEK, et al. | C.A. No.     2023CA0067-M |
| Appellants | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| MICHAEL J. SALAY, et al. | COURT OF COMMON PLEAS<br>COUNTY OF MEDINA, OHIO |
| Appellees | CASE No.     22 CIV 0425 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2024

---

SUTTON, Judge.

{¶1}    Plaintiffs-Appellants, Steve and Lucie Petranek, appeal from the judgment of the Medina County Court of Common Pleas.  This Court affirms.

I.

**Relevant Background**

{¶2}    This appeal arises from a complaint filed by the Petraneks against their neighbors, Defendants-Appellees Mike and Shelly Salay, for claims of continuing trespass and private nuisance relating to a pond constructed in 1992, which is adjacent to the Petraneks' property.  The Petraneks purchased the property in 2017.  The complaint also named the former owner of the Petraneks' property, K.M., as a defendant because she allegedly failed to disclose, or fraudulently concealed, drainage and flooding issues regarding the pond prior to the Petraneks' purchase of the property.  However, because the Petraneks reached a settlement agreement with K.M., she is not a party to this appeal.

{¶3} A jury trial ensued regarding the Petraneks' claims against the Salays for continuing trespass and private nuisance. After the close of the Petraneks' case-in-chief, the Salays moved for a directed verdict on all claims. After arguments of counsel, the trial court granted a directed verdict only as to private nuisance based upon a theory of negligence. The Petraneks' claims for continuing trespass and intentional nuisance were submitted to the jury. The jury returned a verdict in favor of the Salays.

{¶4} The Petraneks now appeal raising six assignments of error for our review. To aid our analysis, we group and discuss certain assignments of error together.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DIRECTING A VERDICT IN FAVOR OF THE [SALAYS] ON [THE PETRANEKS'] CLAIM FOR PRIVATE NUISANCE BASED ON NEGLIGENCE.**

{¶5} In their first assignment of error, the Petraneks argue the trial court erred in directing a verdict in favor of the Salays on the Petraneks' claim for private nuisance based upon negligence. For the following reasons, we disagree.

{¶6} Civ.R. 50(A)(4) provides as follows:

[w]hen a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶7} "A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." *Ulrich v. Mercedes-Benz USA, L.L.C.*, 2010-Ohio-348, ¶ 6 (9th Dist.), quoting *Kane v. O'Day*, 2007-Ohio-702, ¶ 18 (9th Dist.). "The

motion 'does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.'" *Ulrich*, quoting *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 2002-Ohio-2842, ¶ 4, quoting *O'Day v. Webb*, 29 Ohio St.2d 215 (1972), paragraph three of the syllabus. "Accordingly, we review [a] * * * ruling on a motion for a directed verdict de novo." *Ulrich*, quoting *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 2009-Ohio-2612, ¶ 6 (9th Dist.).

{¶8} A nuisance is "the wrongful invasion of a legal right or interest." *Amore v. Ohio Turnpike Comm.*, 2011-Ohio-1903, ¶ 10 (9th Dist.), quoting *Taylor v. Cincinnati*, 143 Ohio St. 426, 431-432 (1944). A private nuisance consists of "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Ogle v. Ohio Power Co.*, 2008-Ohio-7042, ¶ 7 (4th Dist.), quoting *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 712 (4th Dist. 1993), citing Restatement of the Law 2d, Torts, § 821D, at 100 (1979). To establish a private nuisance, a plaintiff must demonstrate an invasion that is "either (1) intentional and unreasonable or (2) unintentional but caused by negligent, reckless, or abnormally dangerous conduct." *Ogle* at ¶ 7, citing *Brown* at 712-713, citing Restatement of the Law 2d, Torts, § 822, at 113-115 (1979).

{¶9} "Nuisances can be further classified as absolute or qualified." *Pietrangelo v. PolyOne Corp.*, 2021-Ohio-4239, ¶ 46 (9th Dist.), citing *Kramer v. Angel's Path, L.L.C.*, 2007-Ohio-7099, ¶ 19 (6th Dist.). "An absolute nuisance consists of intentional conduct or the existence of an abnormally dangerous condition." *Pietrangelo*. "A qualified nuisance, on the other hand, 'is premised upon negligence.'" *Pietrangelo* at ¶ 46, quoting *Kramer* at ¶ 21. "A qualified nuisance is a lawful act 'so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another.'" *Pietrangelo*, quoting *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.*, 146 Ohio St. 406 (1946), paragraph two of the syllabus. "A claim alleging

qualified nuisance is, in effect, a claim of negligence, and negligence must be pleaded and proved in order for a plaintiff to recover." *Pietrangelo* at ¶ 46, citing *Allen Freight Lines, Inc. v. Consol. Rail Corp*., 64 Ohio St.3d 274, 275-276 (1992). "The allegations of nuisance and negligence therefore merge, as the nuisance claims rely upon a finding of negligence." *Pietrangelo*. "In order to establish an actionable claim of negligence, a plaintiff must show the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach." *Rieger v. Giant Eagle, Inc*., 2019-Ohio-3745, ¶ 10. "The failure to prove any one of these elements is fatal to a claim of negligence." *Id.*

{¶10} Here, the record indicates the pond in question was designed and constructed by the Salays in 1991 and 1992, and the Petraneks purchased their adjacent property in 2017. When the pond was constructed, the Petraneks did not own the adjacent property. During trial, there was no evidence of negligence presented on the part of the Salays with respect to the design and construction of the pond. While the Petraneks allege issues with the permitting process for the pond, the location of the pond and driveway, and the depth of the pond, they do not point to any negligent acts performed by the Salays which caused wetness on their property. Medina County approved the pond construction plans and driveway permit. The record also clearly indicates that the former owner of the Petranek property, not the Salays, installed a junction box and piping system on what is now the Petranek property to move water across the Petraneks' property to Chippewa Lake.

{¶11} Based upon this record, we cannot say the trial court erred in directing a verdict in favor of the Salays on the Petraneks' claim for private nuisance based on negligence.

{¶12} Accordingly, the Petraneks' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO INSTRUCT THE JURY ON PRIVATE NUISANCE BASED ON NEGLIGENCE.**

{¶13}   In their second assignment of error, the Petraneks argue the trial court erred in failing to instruct the jury on private nuisance based on negligence.  Based upon our resolution of the Petraneks' first assignment of error, however, their second assignment of error is moot, and we decline to address it. App.R. 12(A)(1)(c).

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO READ JURY INTERROGATORY NOS. 3 THROUGH 6 RELATED TO THE TRESPASS CLAIMS.**

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO READ JURY INTERROGATORY NOS. 7 THROUGH 10 RELATED TO THE NUISANCE CLAIMS.**

{¶14}   In their third and fourth assignments of error, the Petraneks argue the trial court committed reversible error in failing to read jury interrogatory nos. 3 through 10 aloud to the jury, prior to the jury's deliberation.

{¶15}   Civ.R. 49(B) states, in relevant part:

The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.

The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict,

and the court shall direct the jury both to make written answers and to render a general verdict.

{¶16} Here, the record reveals the trial court instructed the jury on interrogatory nos. 1 through 10, in pertinent part, as follows:

You will be given written questions called interrogatories. You must answer them in writing, starting with the first question and you must carefully follow the directions about how to proceed because the directions will tell you which questions to answer and which verdict forms are to be completed based on your interrogatory answers. A question is answered when at least six of the jurors agree. All who agree must sign in ink with the foreperson signing first. If six jurors cannot agree on an answer, you are instructed to report that to the Court.

I will go over the interrogatories with you now. There are a total of ten interrogatories. What you will see is they are numbered and also to keep it clarified for you, you guys don't have copies of these and I also recognize you can't see it from there, but it also . . . clarifies for you which claim the interrogatory pertains to so you will know whether it's the trespass or the nuisance and then there will be a question at the top.

Interrogatory No. 1 says do you find by a preponderance of the evidence that the [Petraneks] had a right to possession of their property. There's a yes and a no. There is eight spaces under the yes, eight spaces under the no. Each of you signs your name in ink corresponding to what your decision is, then there's instruction on the bottom of each interrogatory.

If the answer of six or more jurors to Interrogatory No. 1 is yes, proceed to Interrogatory No. 2. If the answer of six or more jurors to Interrogatory No. 1 is no, your deliberations are complete. Sign the general verdict form for the [Salays] and then notify the Court that you're finished.

So as long as you pay close attention to the instructions on the bottom of each interrogatory, it should get you to accurately filling out the verdict form.

Further, the record shows the jury completed interrogatory nos. 1, 2, and 7, along with the corresponding verdict forms for continuing trespass and nuisance.

{¶17} Notably, in their argument regarding the interrogatories, the Petraneks indicate the trial court read interrogatory nos. 1 and 2 to the jury, but the record clarifies the trial court only read interrogatory no. 1 to the jury as an example of how to follow the directions listed thereon, which

would then lead the jury to the proper verdict form. Further, the Petraneks do not cite any law indicating a trial court must read aloud all interrogatories to the jury. There is no indication the jury was confused by the trial court's instructions regarding the interrogatories and verdict forms. The record instead demonstrates the jury was able to answer the interrogatories and make general verdicts, in favor of the Salays, as to the claims of continuing trespass and intentional nuisance. *See* Civ.R. 49(B).

{¶18}   Accordingly, the Petraneks third and fourth assignments of error are overruled.

### ASSIGNMENT OF ERROR V

**THE VERDICT IN FAVOR OF THE [SALAYS] ON [THE PETRANEKS'] CLAIM FOR CONTINUING TRESPASS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

### ASSIGNMENT OF ERROR VI

**THE VERDICT IN FAVOR OF THE [SALAYS] ON [THE PETRANEKS'] CLAIM FOR PRIVATE NUISANCE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶19}   In their fifth and sixth assignments of error, the Petraneks argue the jury's verdicts in favor of the Salays on the claims of continuing trespass and intentional nuisance are against the manifest weight of the evidence. Specifically, the Petraneks claim: (1) through the Salays' retention of control over the pond, the Salays "intentionally caused an unreasonable and harmful interference with the flow of surface water that has catastrophically damaged the [p]roperty[,]," and (2) "the pond and its overflow were absolutely unreasonable."

{¶20}   When the weight of the evidence is challenged in a civil case, this Court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial

ordered.'" (Bracketed text in original.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001). In *Eastley* at ¶ 12, the Supreme Court of Ohio explained:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

(Emphasis deleted.) Further, in weighing the evidence, an appellate court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *In re B. T-H.*, 2022-Ohio-4139, ¶ 12 (9th Dist.), quoting *Boreman v. Boreman*, 2002-Ohio-2320, ¶ 10 (9th Dist.).

{¶21} Here, the jury heard testimony from Mrs. Petranek, Mr. Salay, each party's expert witness, and other witnesses called by the Petraneks in their case-in-chief. The jury also heard the cross-examination of those witnesses. Further, the jury reviewed photographs of the property and pond, maps, expert reports, videos of the property and pond, and other documents relevant to this action. Mr. Salay, and Mr. Salay's expert witness, both professional civil engineers, testified as to the pond's functionality in retaining 97% of the water that would have otherwise run onto the Petraneks' property due to the natural drainage of the land. The jury heard testimony, and reviewed evidence, that the Petraneks' property has three drainage areas on it that flow toward Chippewa Lake. Prior to the pond's construction, Mr. Salay testified a 15-foot-wide grass swale, or catchment, existed across the Petranek property in the wet area, and the water flow was like a "tidal wave[.]"

**{¶22}** Based upon a thorough review of the record, we conclude this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest injustice by returning verdicts on the Petraneks' claims for continuing trespass and intentional nuisance in favor of the Salays.

**{¶23}** Accordingly, the Petraneks' fifth and sixth assignments of error are overruled.

## III.

**{¶24}** The Petraneks' first, third, fourth, fifth, and sixth assignments of error are overruled. The Petraneks' second assignment of error is moot. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

DAVID M. CUPPAGE and TAYLOR S. MAHALKO, Attorneys at Law, for Appellants.

PAUL B. RICARD and GIANNA M. CALZOLA, Attorneys at Law, for Appellees.